UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal No. 05-CR-67 (DSD/SRN)** |
| **Plaintiff,** | |
| v. | **REPORT & RECOMMENDATION** |
| **James Elliot Ward,** | |
| **Defendant** | |

Erika Mozangue, Esq., on behalf of Plaintiff

Daniel Scott, Esq., on behalf of Defendant

___

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendant's Motion to Suppress Evidence Obtained as the Result of Search and Seizure (Doc. No. 10) and Defendant's Motion to Suppress Statements, Admissions and Answers (Doc. No. 16). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.[1]

___

[1] This matter is set to be tried before the Honorable David S. Doty, United States District Court Judge for the District of Minnesota, on May 23, 2005. Non-dispositive motions have been addressed by the Court in a separate Order.

1

**I.      PROCEDURAL BACKGROUND**

An indictment dated March 8, 2005 was filed against Defendant charging him with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1), and with one count of possessing stolen firearms, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).

There was no testimony at the criminal motions hearing.  The Court received in evidence Government Exhibit 1, a cassette recording of Defendant's statement, and Government Exhibit 2, Defendant's Conditions of Release, issued by the Minnesota Department of Corrections.

**II.     FACTUAL BACKGROUND**

On February 24, 2005, Minneapolis Police Department Officer J. Waite received information from a Confidential Reliable Informant ("CRI") that a person known to the CRI as "Jim" would be transporting stolen firearms in the area of 22nd Street East and Clinton Avenue to the area of 32nd Street East and Columbus Avenue South in Minneapolis.  (Govt.'s Omnibus Answer to Def.'s Pretrial Mot. at 1.)  The Minneapolis Police Department had worked with this CRI on more than ten previous occasions and his/her information had proven to be reliable.  The CRI provided a physical description of Jim and a description of the vehicle in which he would be driving.  Id.

Officers then conducted surveillance in the area of 22nd Street East and Clinton and observed a vehicle matching the CRI's description of Jim's vehicle.  In addition, the driver of the vehicle matched the physical description provided by the CRI.  Officers checked the vehicle's license plate registration, which revealed that the registered owner was James Elliot Ward.  Officers confirmed that Defendant was currently on parole and had several felony convictions.  Officers subsequently searched

Defendant's vehicle and found three shotguns wrapped in a blanket lying behind the front seat. Id. at 1-2.

Defendant made one statement while in custody. The statement was made on February 24, 2005 to Sgt. M. Taylor of the Minneapolis Police Department. (See Govt. Ex. 1, Cassette Recording of 2/24/05 Statement.) Before interviewing Defendant, Sgt. Taylor asked some background questions, such as Defendant's name, address, date of birth, and name and place of employment. While answering the question about employment, Defendant stated that he was a construction worker, but had not been working recently because, 'I relapsed and have been using drugs since then and getting into some shit.' (Govt. Ex. 1.) Prior to asking Defendant further questions, Sgt. Taylor provided Defendant with his Miranda warnings and asked if he understood his rights. Defendant stated that he understood his rights, and with those rights in mind, wished to speak with the officer. Defendant then proceeded to make his statement.

### III. DISCUSSION

#### A. Motion to Suppress Evidence

Defendant moves to suppress evidence seized from his vehicle, arguing that the search was conducted without a warrant, without probable cause and was lacking in exigent circumstances. The Government objects, arguing that the CRI's information was sufficient to establish probable cause.

Under Terry v. Ohio, 392 U.S. 1, 30 (1968), an officer may conduct a brief investigatory stop where the officer has reasonable suspicion that criminal activity may be afoot. A Terry stop must be based on "at least a minimal level of objective justification," but the standard for reasonable suspicion is less demanding than for probable cause. Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Reliable

information from a citizen informant may create reasonable suspicion to justify an investigative detention. See Alabama v. White, 496 U.S. 325, 326-27 (1990) (finding reasonable suspicion to stop person because anonymous informant correctly described detainee's vehicle, time of departure and destination); United States v. Hernandez-Hernandez, 327 F.3d 703, 706 (8th Cir. 2003) (holding that reasonable suspicion justified stop when two independent eyewitness sources informed police that defendant sold drugs and possessed firearms).

In United States v. Quarles, the Eighth Circuit held that officers had reasonable suspicion to stop a suspect based on a tip supplied by a single CRI, where officers observed a person and vehicle matching the CRI's description. 955 F.2d 498, 501 (8th Cir. 1992), cert. denied, 504 U.S. 944 (1992). The court held that probable cause to arrest the driver of the car existed when police learned the name of the driver who was mentioned by the CRI as the possible driver of a car being used to make deliveries of crack. Id.

Here, officers had reasonable suspicion to stop Defendant. Not only did the tip come from an informant known to be reliable, but officers also substantially corroborated the tip by observing Defendant, who matched the CRI's description of "Jim," driving the car described by the CRI, in the area described by the CRI. A license plate check showed that the car was registered to James Elliot Ward. The CRI stated that Defendant would be selling stolen firearms out of his car. A criminal background check revealed that Defendant was on parole and had numerous felony convictions on his record. In these circumstances, it was reasonable for officers to suspect that Defendant was involved in the stolen firearms sale to which the CRI had alerted them. Their justifiable stop confirmed that Defendant was James Elliot Ward, the registered owner of the car described by the CRI. As in

Quarles, the officers had sufficient probable cause on which to arrest Defendant and to conduct a search contemporaneous to arrest. See Quarles, 955 F.2d at 501. Also, pursuant to the automobile exception to the warrant requirement, officers may search vehicles if they have probable cause to believe that evidence of a crime or contraband would be found in the vehicle. California v. Acevedo, 500 U.S. 565, 580 (1991); United States v. Ross, 456 U.S. 798, 806 (1982).

In addition, as a parolee, Defendant's conditions of release were in effect at the time of his arrest. (Govt. Ex. 2, Conditions of Release.) The release conditions, signed by Defendant in September 2004, prohibited him from possessing a firearm and also required him to submit to unannounced searches of his person, vehicle or premises. (Id.)

Based on all of the above, the Court concludes that sufficient probable cause existed to support the warrantless search of Defendant's vehicle. Therefore, the Court recommends that Defendant's motion to suppress evidence seized as a result of the search be denied.

### B.    Motion to Suppress Statements

Defendant invokes his Fifth and Sixth Amendment rights and seeks to suppress his February 24, 2005 statement, claiming that it was made without the assistance of counsel and was not made freely and voluntarily. The Government argues that Defendant knowingly and intelligently waived his rights, thus his suppression motion should be denied.

The Fifth Amendment privilege against self-incrimination protects individuals from being forced to testify against themselves. U.S. Const. amend. V. Miranda warnings must be given before any interrogation of a suspect in custody may take place. Miranda v. Arizona, 384 U.S. 436, 460-61 (1966). Under Miranda, custody involves the deprivation of "freedom of action in any significant way."

5

Id. at 444. Ultimately, "the inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." Stansbury v. California, 511 U.S. 318, 322 (1994).

Before the government may introduce in its case-in-chief an incriminating statement made by a defendant, it must prove a voluntary, knowing and intelligent waiver of the accused's rights under the Fifth Amendment. Miranda, 384 U.S. at 475. To determine if a defendant's testimony was given voluntarily, courts must ask whether, in the totality of the circumstances, law enforcement officials obtained the evidence by overbearing the will of the accused. See Haynes v. Washington, 373 U.S. 503, 513-14 (1963). The factual inquiry centers upon (1) the conduct of the law enforcement officials in creating pressure; and (2) the suspect's capacity to resist that pressure. See Mincey v. Arizona, 437 U.S. 385, 399-401 (1978).

Here, there is no question that at the time the statement was made, Defendant was in custody. There is no evidence, however, to suggest that Defendant's will was in any way overborne by the interviewing officer. The interviewing officer's tone and demeanor was conversational and professional and he made no threats, promises or otherwise coerced Defendant to speak with him. (See Govt. Ex. 1.) Sgt. Taylor read a Miranda warning, determined that Defendant understood it, then asked if Defendant would like to proceed with the interview.

Routine booking questions do not constitute interrogation because such questions are not designed to elicit incriminating responses. See Pennsylvania v. Muniz, 496 U.S. 582, 600-02 (1990). Thus, Sgt. Taylor's initial questions, asking for Defendant's name, address, telephone number, occupation and place of employment are the type of routine, background questions that do not

constitute interrogation and do not require a <u>Miranda</u> warning.

The <u>Miranda</u> right to counsel only attaches when a suspect invokes the right during custodial interrogation by making a clear and unequivocal request for counsel.  <u>See</u> <u>Davis v. United States</u>, 512 U.S. 452, 458-59b (1994) (holding that defendant's statement, "maybe I should talk to a lawyer," was ambiguous and did not require officers to clarify); <u>Dormire v. Wilkinson</u>, 249 F.3d 801, 805 (8th Cir. 2001) (finding no clear invocation of right to counsel because defendant's question, "Could I call my lawyer?" was ambiguous request for counsel), <u>cert. denied</u>, 534 U.S. 962 (2001).

Here, Defendant understood his <u>Miranda</u> rights, agreed to talk with Sgt. Taylor and at no time asked for an attorney.   For all of the forgoing reasons, the Court recommends the denial of Defendant's motion to suppress statements, admissions or answers.

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

**1.**     Defendant's Motion to Suppress Evidence Obtained as the Result of Search and Seizure (Doc. No. 10) be **DENIED;** and

**2.**     Defendant's Motion to Suppress Statements, Admissions and Answers (Doc. No. 16) be **DENIED.**

Dated: April 19, 2005

    <u>s/Susan Richard Nelson</u>
SUSAN RICHARD NELSON
United States Magistrate Judge